## CONTINUATION OF APPLICATION FOR A SEARCH WARRANT

1. I, Special Agent Gregory Pond, was a Police Officer for five years prior to being hired by the Drug Enforcement Administration (DEA) as a Special Agent. I have been employed by the DEA for 13 years. I have worked in St. Louis, Missouri, Afghanistan, and Kalamazoo, Michigan conducting investigations of illegal drug trafficking involving international and interstate drug trafficking organizations. I have received specialized drug trafficking training beginning with the DEA Training Academy and including continuous in-service training during my career with the DEA. I have participated in hundreds of investigations and served as an Affiant for multiple federal search warrant affidavits.

2. This statement is offered in support of an application for a search warrant authorizing the search of the residence located at 614 Reed Ave., Kalamazoo, Michigan, as well as the curtilage of this residence and vehicles and outbuildings found thereon. Based on the facts set forth in this statement, there is probable cause to believe that the residence located at 614 Reed Ave., Kalamazoo, Michigan, will contain (a) evidence of a crime, (b) contraband, fruits of crime and other items illegally possessed, and (c) property used in committing a crime. Specifically, there is probable cause to believe that this residence will contain (a) evidence of distribution of Schedule II controlled substances such as methamphetamine and possession of this controlled substance with intent to distribute, in violation of Title 21 U.S.C. § 841(a)(1), and (b) evidence of conspiracy to possess with intent to distribute controlled substances in violation of Title 21 U.S.C. § 846. The items to be seized are listed in Attachment B. This statement is being submitted for the limited purpose of obtaining a search warrant for the listed location. This statement is not intended to include each and every fact known by me or the government.

3. On January 8, 2019, at approximately 9:00 a.m., Illinois State Police (ISP) Troopers observed a 2007 Lexus SUV, California registration 8FOY385, traveling east bound on I-80 near mile post 58 in Bureau County, Illinois. The Lexus was stopped for a traffic violation and an ISP canine conducted a sniff of the Lexus during the traffic stop. The canine indicated the presence of illegal drugs in the rear doors of the Lexus. The driver, Virginia SANDOR, was arrested and transported to an ISP post for questioning, as was the sole other occupant of the Lexus, SANDOR's husband Mario Esteban LOPEZ-ZENTENO. A thorough search of the Lexus revealed 22 bundles of suspected crystal methamphetamine concealed inside the rear driver and passenger door panels of the Lexus.

4. At the ISP post, SANDOR was read her Miranda warnings in Spanish and SANDOR waived her Miranda rights and agreed to talk with ISP investigators. SANDOR told investigators that she was contacted by a black male subject named Andre in Riverside, California, to drive the 2007 Lexus to Kalamazoo, Michigan. The registered owner/insured party of the 2007 Lexus is Andre M. HOLLIN, with an address of 6979 Palm Ct., Riverside, California. SANDOR was shown a picture of Andre HOLLIN and SANDOR positively identified the subject she knew as Andre as HOLLIN. SANDOR indicated Andre HOLLIN paid SANDOR $2,500.00 in US currency in Riverside, California, when she and her husband LOPEZ-ZENTENO picked up the Lexus to drive it to Kalamazoo where they would meet Andre HOLLIN. SANDOR told investigators she knew there were drugs in the Lexus, but did not know what type of drugs or where they were located in the Lexus.

5. SANDOR agreed to cooperate with ISP investigators and assist in a controlled delivery of the Lexus to Andre HOLLIN in Kalamazoo, Michigan. Controlled calls to Andre HOLLIN's

cellular phone number 313-286-6594 were made by SANDOR and Andre HOLLIN was told SANDOR was en-route to meet Andre HOLLIN in Kalamazoo on January 8, 2019. Law enforcement databases indicate the subscriber/user of 313-286-6594 is Andre HOLLIN.

6. ISP investigators contacted Michigan State Police (MSP) Southwest Enforcement Team (SWET) investigators to arrange a controlled delivery. MSP SWET investigators contacted DEA Kalamazoo Post of Duty investigators for assistance. MSP SWET, DEA and US Postal Inspectors are currently conducting an investigation centered around Andre HOLLIN and his brother Tyrone HOLLIN. In 2018, US Postal Inspectors intercepted multiple packages containing suspected crystal methamphetamine and heroin that were being mailed at the direction of Andre HOLLIN to subjects in Kalamazoo, Michigan, to include Tyrone HOLLIN. Tyrone HOLLIN has been identified as residing at 614 Reed Ave., Kalamazoo, Michigan. Tyrone HOLLIN has been indicted in the Western District of Michigan for crimes associated with the distribution of methamphetamine and there is currently an active federal arrest warrant for Tyrone HOLLIN.

7. On January 8, 2019, ISP and MSP SWET investigators met at the MSP Paw Paw, Michigan Post with the 2007 Lexus, SANDOR and LOPEZ-ZENTENO. Investigators placed two of the bundles of suspected crystal methamphetamine back inside the rear door panels of the Lexus and SANDOR and LOPEZ-ZENTENO called Andre HOLLIN on the 313-286-6594 advising they were close to Kalamazoo. Andre HOLLIN had previously given SANDOR the address of 1227 Little Drive, Kalamazoo, Michigan, and told SANDOR to drive to that location to meet Andre HOLLIN. Investigators observed SANDOR and LOPEZ-ZENTENO arrive at 1227 Little Drive and make contact with a subject driving a black, 2018 Land Rover SUV bearing Illinois registration AB37832. SANDOR and LOPEZ-ZENTENO were observed following the Land Rover driving in an easterly direction, stopping at a gas station, and then driving to 614 Reed Ave, Kalamazoo, Michigan, the residence of Tyrone HOLLIN. Investigators observed Andre HOLLIN exit the Land Rover and briefly meet with SANDOR and LOPEZ-ZENTENO in the driveway at 614 Reed Ave. SANDOR and LOPEZ-ZENTENO left the area on foot and Andre HOLLIN was observed going into the residence at 614 Reed Ave., which is the right side door of the duplex located at 614/616 Reed Ave. Andre HOLLIN was observed exiting 614 Reed Ave. and walking around looking at vehicles/people in the area of 614 Reed Ave. Andre HOLLIN went back into 614 Reed Ave. but came out several more times to check the area, a tactic commonly used by drug traffickers to look for police investigators. On one occasion, investigators observed Andre HOLLIN exit 614 Reed Ave. and walk to the rear passenger door of the Lexus, opening the door and leaning inside the Lexus. Andre HOLLIN then closed the rear passenger door and went back into 614 Reed Ave.

8. At approximately 8:36 p.m., investigators observed the Land Rover and the Lexus being driven to the rear parking area at 614 Reed Ave. The Lexus was driven into a garage and the garage door was closed. At this time investigators had uniformed MSP troopers pull into the driveway at 614 Reed Ave. with flashing lights and investigators made entry into 614 Reed Ave. where Andre HOLLIN was observed last walking into. Andre HOLLIN was found inside 614 Reed Ave. along with a subject who identified himself as Daquary Damont BLANKS. Investigators opened the garage door and found the Lexus parked inside the garage behind 614 Reed. Ave.

9. At this time investigators secured the subjects found inside the residence and contacted the United States Attorney's Office for the Western District of Michigan to apply for a federal search warrant for the residence located at 614 Reed Ave., Kalamazoo, Michigan. The

residence is described as a two story, off white, vinyl sided duplex with two adjacent front doors. The front porch is covered and has white pillars. The reflective numbers 614 are clearly marked on the pillar in front of the door on the right. The driveway runs on the east side of the resisidence from Reed Ave. to the rear parking deck/garage of the residence.

10. Based on my experience and training, I know (a) that the quantities of methamphetamine in this investigation are consistent with drug trafficking rather than personal use, (b) that these quantities reflect an intent to distribute, and (c) that methamphetamine is a Schedule II controlled substance.

11. Based on my training and personal experience, as well as information I have learned from others, I know (a) that drug traffickers often maintain on hand large amounts of U.S. Currency in order to maintain and finance their on-going narcotic business, (b) that drug traffickers maintain books, records, receipts, drug paraphernalia, notes, ledgers, airline tickets, money orders, passports, and other papers relating to the transportation, importation, ordering, sale, and distribution of controlled substances, as well as the movement and concealment of proceeds. That the aforementioned U.S. currency, books, records, receipts, notes, ledgers, etc., are maintained where the drug trafficker has ready access to them, commonly at his or her residence, (c) that the persons involved in drug trafficking conceal in their residence or business, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money acquired from engaging in drug trafficking activities, (d) that when drug traffickers amass large proceeds from the sale of drugs, that the traffickers attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize legitimate business, domestic and foreign banks and/or financial institutions and their attendant services, securities, cashiers checks, money drafts, letters of credit, brokerage house, real estate, "shell" corporations, and business "fronts", (e) that drug trafficker commonly maintain addresses, or telephone numbers in books or papers which reflect names, addresses and or telephone numbers of their associates in trafficking, (f) that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product. That these traffickers commonly maintain these photographs at their residences, (g) that the traffickers usually keep firearms to protect the drugs they distribute and the proceeds from that distribution, and (h) that drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but not limited to, digital display pagers ("beepers"), mobile telephones, clone cellular telephones, speed dialers, electronic telephone books, electronic date books, computers, computer memory discs, money counters, electronic surveillance equipment, eavesdropping equipment, police scanners, and portable communication devices.

12. Based on my training and experience, I know that the items described in the paragraph above, sections a through h, are commonly kept in places where the drug trafficker has dominion and control, where they have ready access to and at places where they reside. I know from my training and experience that drug traffickers frequently utilize multiple residences to further their drug trafficking activities.

13. Based on the facts set forth in this statement, there is probable cause to believe that federal drug offenses have occurred and that evidence of these offenses will be located in the residence located at 614 Reed Ave., Kalamazoo, Michigan.